**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUPERMEDIA LLC, | ) | Case No. 13-10546(KG) |
| | ) | |
|    Reorganized Debtor. | ) | |
| _____ | ) | |
| SUPERMEDIA LLC, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
|    v. | ) | Adv. Proc. No. 15-50044(KG) |
| | ) | |
| YELLOW PAGES PHOTOS, INC., | ) | |
| | ) | |
|    Defendant. | ) | **Re:  Dkt. Nos. 70 & 71** |
| _____ | ) | |

## MEMORANDUM OPINION

The parties in this case and adversary proceeding, SuperMedia, LLC ("SuperMedia") and Yellow Pages Photos, Inc. ("YPPI"), have cross-moved for summary judgment. For the sake of time and because the parties are familiar with the nature of these cases, the Court will not discuss the facts in detail at the outset, except to note that the Court previously issued its opinion (the "Opinion") on the liability of SuperMedia for the administrative expense claim filed by YPPI. *See In re SuperMedia, Inc.*, 2014 WL 7403448 (Bankr. D. Del. 2014). The Court will instead discuss the facts in the discussion of the parties' arguments. The Court is also aware that its decision draws from two separate sources. First is YPPI's proof of claim. Second is SuperMedia's now Second Amended Complaint which it filed in the captioned adversary proceeding.

1

SuperMedia moved for leave to file a Second Amended Complaint which the parties argued immediately before the Court heard argument on the summary judgment motions. In the Second Amended Complaint SuperMedia alleges two new facts. First, SuperMedia alleges that the transfers to AMDOCs and ASEC occurred in 2005-2006, and well before AdMedia Systems, Inc. (AdMedia") (discussed below) registered the copyright. Second Amended Complaint, ¶ 25. Second, SuperMedia alleges that on or about November 3, 2006, Yellow Pages Photos, Inc. changed its name to AdMedia Systems, Inc., and the same day Trent Moore, YPPI's principal, incorporated a new Yellow Pages Photos, Inc., the defendant YPPI. AdMedia thereafter assigned its copyrights to YPPI. Second Amended Complaint, ¶ 8.

The Court granted leave to SuperMedia to file the Second Amended Complaint over YPPI's strenuous objection. YPPI argued that the findings of fact in the Opinion collaterally estopped SuperMedia from raising the issues, the motion to amend was a belated Rule 60 motion and SuperMedia knew earlier about the name change and the creation of YPPI, and the Court's Opinion was collateral estoppel against the allegations.

Prejudice to the non-moving party, here YPPI, is the touchstone of whether to permit amendment, and significant delay – unjustified or undue – is sufficient prejudice to denying the motion to amend. *Zen Ins. v. Unbreakable Lock Co.*, 276 F. App'x 200, 202 (3d Cir. 2008); *CMR DN Corp. v. City of Philadelphia*, 703 F. 3d 612, 629 (3d Cir. 2013). There is, however, a general presumption in favor of allowing amendments. *Boileau v. Bethlehem Steel*, 730 F. 2d 929 (3d Cir. 1984). Further, permitting amendments to correct a pleading is desirable because it enables the trial court to make its determination on the merits of

2

the case. *West Run Student Housing Assoc. v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). Here, the Court was satisfied that SuperMedia was entitled to amend to bring the facts to a head.

<p align="center">Summary Judgment Standard</p>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to this proceeding pursuant to Fed. R. Bankr. P. 7056). The moving party bears the burden of establishing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 242, 248 (1986). While the non-moving party must itself come forward with facts showing that a genuine issue exists, *Matsushita*, 475 U.S. at 587, courts will view all facts and draw all reasonable inferences most favorably to the non-moving party. *Pa. Coal Ass'n v. Babbit*, 63 F. 3d 231, 236 (3d Cir. 1995). The "mere existence" of a factual dispute does not defeat a properly supported motion for summary judgment. The evidence must be significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). Where, as here, there are cross-motions for summary judgment, the Court must ensure that the non-moving party on each theory has the inferences to be drawn from the underlying facts viewed in the light most favorable to it as the party opposing the motion. *Matsushita*, 475 U.S. at 578-88.

THE OPINION

The Court's findings in the Opinion are material to its summary judgment ruling because YPPI is attempting to employ collateral estoppel to halt many of SuperMedia's arguments. Therefore, it is important for the Court to describe its "findings" at the outset. As the Court discusses in the Opinion, the issue in the liability trial was the "allowance and payment of an administrative expense [claim] under Section 503(b)(1) of the Bankruptcy Code". Opinion at * 1. It is important to remember that the issue tried was whether SuperMedia "breached a license agreement and committed copyright infringement during the 43 days between the date of SuperMedia's bankruptcy petition and the effective date of its confirmed plan, i.e., between March 18, 2013 and April 30, 2013 (the "Administrative Claim Period")." *Id.* Important to this ruling for the summary judgment motions, the Court found after four days of trial and an additional day to allow SuperMedia to supplement the record that

- In 2009, SuperMedia transferred all of the images it licensed from YPPI to Tata, MPS, AMDOCS and ASEC, and later to BieMedia, Web.com, Hostopia, DexMedia, Facebook and Google. Opinion at * 14.

- The transfers were willful. Opinion at * 19.

These were findings of fact by the Court, but whether SuperMedia is collaterally estopped from litigating the "findings" is governed by cases discussed below.

**STATUTORY DAMAGES OR
ATTORNEYS' FEES UNDER COPYRIGHT ACT
SECTION 412**

AdMedia did not register the Licensed Images with the Copyright Office until January 2007. SuperMedia Exhibits I and J. SuperMedia claims that its infringing

4

conduct commenced in 2005 or 2006 (SuperMedia Ex. G, Dale Decl. ¶¶ 3-4) and that 17 U.S.C. § 412(2) prohibits statutory damages or attorneys' fees for any infringements if the copyright holder fails to register the copyrights before the infringement at issue commences. *Johnson v. Jones*, 149 F. 3d 494, 506 (6th Cir. 1998). YPPI does not challenge the factual allegation that the transfers of the Licensed Images to AMDOCS and ASEC took place in 2005-2006.

The bar of Section 412(2) applies even for post-registration infringements where the first infringing act occurred before the copyright was registered. *Mason v. Montgomery Data, Inc.*, 967 F. 2d 135, 144 (5th Cir. 1992). In *Leonard v. Stemtech Health Sciences, Inc.*, 08-067-LPS-CJB, 2011 WL 6046701, at *12 (D. Del. Dec. 5, 2011), *adopted* at 2012 WL 1133185 (D. Del. Mar. 28, 2012), the Delaware District Court held that plaintiff was not entitled to statutory damages or attorneys' fees for pre - or post-registration infringements because the infringement began before plaintiff registered his copyrights.

*Leonard v. Stemtech Health Sciences, Inc.*, is a thorough discussion of the impact of Section 412 when transfers occurred prior to registration of the copyright. Again, it is undisputed that SuperMedia transferred the Licensed Images to AMDOCS and ASEC in 2005 to 2006, and that YPPI did not register the copyrights until January, 2007.

Section 412 provides:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(b), no award

5

of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--

> (1)
>
> any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2)
>
> any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

In *Leonard v. Stemtech*, the District Court dealt with a situation involving more than one hundred unauthorized uses of images. The defendant, Stemtech, sought summary judgment on its contention that because the alleged infringement happened before the plaintiff registered the images, therefore plaintiff was barred from seeking statutory damages and attorneys' fees for transfers both before and after the copyright registration. In *Stemtech* the District Court, based on defendant's (the alleged infringer) arguments, stated the issue as follows:

> Defendant argues that (1) any of its distributors' acts of post-registration infringement of Images 3 and 4 would be considered part of a single continuing infringement for purposes of Section 412; and (2) this continuing infringement "commenced" at least as early as October 2007—the date when Plaintiff first alleges he discovered Defendant's contributory and vicarious liability for infringement of the Images on www.yourstems.com. Since this continuing infringement "commenced" before the date of the registration, Defendant claims that Plaintiff is barred from electing statutory damages and attorney's fees, even if additional acts of infringement that were part of this pattern of continuing conduct occurred after the registration date.

The District Court accepted defendant's argument. The District Court found that the post-registration infringement was continuing conduct. The District Court further found that every court to consider the question has held that "infringement 'commences' for

6

purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs," quoting *Johnson v. Jones*, 143 F.3d 494, 506 (6th Cir. 1998). *Id.* at *12. The District Court stated that the post-infringement registration restriction on statutory damages and attorneys' fees incentivized copyright owners to promptly register their copyrights. The District Court therefore granted summary judgment holding that the post-registration infringements would be treated as "continuing infringement" and that plaintiff could not elect to obtain statutory damages or attorneys' fees. *Id.* at * 18.

Clearly, AMDOCS and ASEC are pre-registration transfers and summary judgment is granted in SuperMedia's favor. The remaining transfers occurred post-registration. According to *Leonard v. Stemtech*, this fact does not make a difference. Reading Section 504(c)(1) of the Copyright Act, the District Court determined that courts look at the number of works and the number of infringers, not the number of infringements. Thus, quoting H.R. Rep. No. 94-1476 at 162, as represented in 1976 U.S.C.C.A.N. at 5659, 5778, the District Court concluded that "[a] single infringer of a single work is liable for a single amount . . . , no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated, or occurred in a separate series." *Leonard v. Stemtech*, 2011 WL 6046701 at * 14.

The District Court held that the plaintiff's claims for statutory damages and attorneys' fees were precluded by Sections 412 and 504(c)(1) of the Copyright Act for the reasons discussed. For the thoughtful reasons given in *Stemtech*, the Court similarly rules that YPPI may not collect statutory damages and attorneys' fees because (1) SuperMedia was a single infringer (2) of a single work and (3) the first transfer occurred before YPPI

7

(or AdMedia) registered its copyright. The Court therefore grants summary judgment in favor of SuperMedia, ruling that YPPI is not entitled to statutory damages and attorneys' fees.

The Court previously ruled the ASEC transfers are not to be included for damage purposes. *See* Memorandum Opinion and Order, dated September 3, 2015. D.I. 366 and 367. The AMDOCS transfer occurred before YPPI registered the copyrights and they are, therefore, not to be included for statutory damages. But there are other transfers that occurred after Idearc's discharge (December 31, 2009) and before SuperMedia's petition date (March 18, 2013). YPPI must bear its burden of proof that the transfers of the Licensed Images caused it actual economic loss and that the transfers were willful. The trial will therefore not involve statutory damages but actual loss. The Court grants summary judgment in SuperMedia's favor on statutory damages and attorneys' fees.

## COLLATERAL ESTOPPEL

SuperMedia now claims that its transfers to AMDOCS and ASEC occurred before 2007, and actually in 2005 or 2006. For this proposition, SuperMedia relies on the deposition testimony of Stephen Kurth and the Declaration of Valerie Dale. Mr. Kurth testified that SuperMedia began utilizing AMDOCS/Office Tiger as an outsourcer for ad creation services around 2005. Kurth Dep. Tr. 108:16-24. In response to YPPI's Third Set of Interrogatories served in April 2015, SuperMedia responded that its transfers to ASEC and AMDOCS occurred in 2005 and 2006. Also, Valerie Dale declared that the ASEC and AMDOCS transfers occurred in 2005 and 2006. Declaration of Valerie Dale, SuperMedia Ex. G.

YPPI argues that SuperMedia is collaterally estopped from arguing that the transfers to AMDOCS and ASEC occurred in 2005 and 2006 because the timing issue was already adjudicated and decided. In the Opinion, the Court adopted SuperMedia's position that the transfers at issue happened in or after 2009. Opinion at 16, 33. Therefore, argues YPPI, SuperMedia is collaterally estopped from now claiming that transfers occurred in 2005 or 2006. YPPI claims that "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F. 3d 244, 249 (3d Cir. 2006) (quoting *Raytech Corp. v. White* 54 F.3d 187, 190 (3d Cir. 1995). Put differently: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same claim or a different claim." Restatement (Second) of Judgments § 27 (1982).

The question here is the determination of what was actually litigated and whether the determination was necessary to the decision. The liability trial was convened to determine whether there was infringement during the 43 days of the Administrative Claim Period, i.e., from March 18, 2013 through April 30, 2013. What was litigated and necessary to the decision did not include when during the pre-petition period the transfers of the Licensed Images occurred. Nor was the timing of the transfers necessary to the decision on whether the transfers happened during the 43 days of the

administrative claim period. The Court never ruled on specific transfer dates, and it was not necessary for the Court to make such a finding. Therefore, SuperMedia is not prohibited by collateral estoppel from litigating the dates of the transfers. The Court therefore denies YPPI's motion for summary judgment.

## ONE WORK

SuperMedia urges the Court to find that the Licensed Images comprise a single work pursuant to 17 U.S.C. § 504(c)(1), and that each individual image is not a separate work. The Court agrees. YPPI has litigated the issue and was unsuccessful. *See Yellow Pages Photos, Inc. v. ZipLocal LP*, 2015 WL 4577269 (11th Cir. July 30, 2015). There, following the trial, the court of appeals held that the compilation was but one work. The Eleventh Circuit Court of Appeals held that:

> We are also not persuaded by YPPI's insistence that the photos compiled under a heading only become useful when a customer selects a particular photo to build an ad. To the contrary, Moore testified about the collective usefulness of the headings: they allowed the customer to search by subject matter relevant to their business, and the multiple photos under that heading gave the customer flexibility to choose between different "looks" for the same subject. According to Moore, the very idea at the heart of his business was to provide customers with an integrated collection of photos, whose chief value came from being "heading specific" and sharing the "same vernacular." [Doc. 423 at 66.] Neither the fact that YPPI would sometimes offer per-photo prices rather than per-collection prices to customers, nor that its photos were eventually used individually to create separate advertisements, diminishes the importance of the fact that YPPI's entire business strategy was to distribute and publish the photos collectively, so that customers could access and search them collectively.
>
> \* \* \*
>
> In sum, because YPPI created, marketed, published, registered, and repeatedly described its photos as 178 collections under 178 headings organized by subject matter, we affirm the district court's decision to treat

each collection as a compilation, subject to only one award of statutory damages.

*Id.* at *19-20 (footnote omitted).

It appears that YPPI does not contest SuperMedia's "one work" claim, as in its opposition brief YPPI does not argue against the "one work" claim. The holding of the Eleventh Circuit is, indeed, collateral estoppel against any opposing argument by YPPI. The identical issue was previously adjudicated and actually litigated, the determination was necessary to the decision and YPPI was fully represented in the *ZipLocal* matter. Therefore, the Licensed Images are a single work.

## **THE IDEARC DISCHARGE**

Idearc, Inc. ("Idearc") filed for bankruptcy protection on March 31, 2009, in the United States Bankruptcy Court for the Northern District of Texas. *In re Idearc, Inc., et al.*, No. 09-31828(BVH) (Bankr. N.D. Tex. 2009). SuperMedia succeeded Idearc. The bankruptcy court in *Idearc* entered an "Order Confirming First Amended Joint Plan of Reorganization of Idearc Inc." which provided that:

> . . . all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Idearc Interests, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

The confirmation order also enjoined anyone holding a claim from commencing any action. *Id.* at ¶ 10.9.

SuperMedia argues that the Idearc discharge injunction bars YPPI from seeking damages for claims that arose before December 31, 2009, the effective date of Idearc's confirmation. *See* 11 U.S.C. § 1141(d)(1)(A). Further, the discharge enjoins the commencement of litigation or claims to collect a debt that was discharged. Therefore, confirmation of a plan of reorganization bars claims provided (1) the claim arose prior to confirmation and (2) the creditors received adequate notice of the bankruptcy case. *Wright v. Corning*, 679 F. 3d 101, 107 (3d Cir. 2012).

The issue therefore turns in part upon notice and whether YPPI received adequate notice of the Idearc bankruptcy. The record establishes that Kurtzman Consulting Corporation ("KCC"), the court-appointed claims agent for the Idearc bankruptcy, mailed YPPI at least two notices, which included a "Combined Notice of Commencement and Bar Date." SuperMedia Ex. L. The notice was sufficient to discharge YPPI's claims to pre – December 31, 2009 transfers. Mailing notice to YPPI's last-known address which YPPI acknowledged was its address (SuperMedia Exs. L and N; SuperMedia Ex. B, Moore Dep. 261:16-24) was adequate notice. *In re Mariner Post-Acute, Inc.*, 303 B.R. 42, 46 (Bankr. D. Del. 2003). Additionally, SuperMedia served YPPI with "Notice of Proposed Cure Amounts for Assumption of Executory Contracts and Unexpired Leases, dated October 16, 2009" listing the cure amount at "$0.00." YPPI Ex. M.

YPPI argues that it did not learn of any Idearc violation of the License Agreement until "around December 2010." Trial Tr. (Moore), 17:11-21; Moore Dep. Tr. 287:7-15,

287:19-288:8. YPPI therefore claims that it did not know it had a claim at the time of Idearc's discharge and that Idearc concealed any YPPI claims by scheduling YPPI solely as an executory contract participant and indicating that its cure claim was "$0.00." YPPI Ex. M.

YPPI cites two opinions in support of its claim that it lacked knowledge of any claim at the time of the Idearc discharge. In *Acevedo v. VanDorn Plastic Machinery Co.*, 68 B.R. 495 (Bankr. E.D.N.Y. 1986), the court held that the debtor was obligated to notify the claimant of its claim and having failed to do so, the discharge did not operate against the claimant. In *DPWN Holdings (USA), Inc. v. United Airlines, Inc.*, 871 F. Supp. 2d 143 (E.D.N.Y. 2012), the court likewise held that in the absence of knowledge of its claim, the claimant was not bound by debtor's discharge. *DPWN* involved an anti-trust claim. The court held that:

> [w]here a debtor is aware of certain claims against it due to information uniquely within its purview, due process requires that it notify claimants of the character of those claims prior to any discharge. If such notice is not provided, then the claim cannot have been discharged, unless the claimant could have discovered the existence of the claim through the exercise of reasonable diligence prior to the discharge. (footnote omitted.)

*Id.* at 159. The courts in DPWN and Acevedo were concerned with due process and fairness.

However, in *United States v. LTV Corp.* (*In re Chateaugay*, Corp.), 944 F. 2d 997 (2d Cir. 1991), the court upheld the discharge against an environmental clean-up claim, focusing on the existing relationship between debtor and the Environmental Protection Agency. In distinguishing its case from *Chateaugay*, the *DPWN* court stated: "Thus, while

13

the EPA merely lacked knowledge as to the scope of its unknown claims, DHL lacked knowledge as to the existence of any claim whatsoever." *Id.* at 153.  The *Chateaugay* court focused on the relationship between the parties and that the claimant failed to undertake any reasonable investigation on notice of the bankruptcy.  *See also Williams v. Placid Oil Company* (*In re Placid Oil Co.*), 731 F. 3d 151 (5th Cir. 2014) in which the court held that a bar date notice need not directly inform "unknown claimants" of the nature of their claims.  The court found debtor's notice to be sufficient because it "informed claimants of the existence of the bankruptcy case, the opportunity to file proofs of claim, relevant deadlines, consequences of not filing a proof of claim, and how proofs of claim should be filed." *Id.* at 158.

The notices sent to YPPI included all of that information.  However, in the Idearc bankruptcy YPPI was an executory contract claimant.  YPPI cites to *In the Matter of National Gypsum Company*, 208 F.3d 498 (5th Cir. 2000), a decision which involved an executory contract, for its assertion that it did not receive adequate notice for the discharge to control.  In *National Gypsum*, as in this case, National Gypsum, as the debtor, claimed that its creditor, Century Indemnity Company, had its claim discharged "because Century failed to file timely proof of its claim, despite having sufficient notice of the pendency of the bankruptcy to protect its interests, and that the bankruptcy court's confirmation order precluded relitigation of [the] issue." *Id.* at 503.  The Fifth Circuit held that "§ 1141(d) cannot be read to provide for discharge of amounts in default under assumed contracts in a manner that would nullify the cure requirement of section 365(b)(1)." *Id.* at 509.  As in *National Gypsum*, YPPI was an executory contract claimant

14

whose contract Idearc assumed. YPPI therefore was not required to take any action. Like *Idearc*, and on the basis of the *National Gypsum* holding, the Court finds that the claim of YPPI was not discharged by the Idearc confirmation order. The Court therefore denies SuperMedia's motion for summary judgment.

## YPPI'S EXISTENCE

The Court did not previously focus on the following facts which SuperMedia has brought to its attention. Trent Moore incorporated Yellow Pages Photos, Inc. in 2000 ("Old YPPI"). SuperMedia Ex. A. Old YPPI entered into the License Agreement with Verizon Directories Corp. ("Verizon") on November 16, 2001. SuperMedia Ex. C. The License Agreement provided, *inter alia,* that old YPPI could not assign its rights without Verizon's prior written consent. SuperMedia, Ex. C. ¶ 12. On November 3, 2006, old YPPI changed its name to AdMedia Systems, Inc. ("AdMedia"). Also, on November 3, 2006, Moore created Yellow Pages Photos, Inc., as a Florida corporation, and assigned AdMedia's copyrights to YPPI. The assignment included the Licensed Images. SuperMedia Ex. F. However, Mr. Moore has no recollection that AdMedia assigned its rights under the License Agreement to YPPI; and he never asked Verizon or Idearc or SuperMedia for consent to assign the License Agreement. SuperMedia Ex. B, Moore Dep. Tr. at 256:9-12-260:13-19.

The failure to assign the License Agreement to YPPI would mean that YPPI does not have standing to enforce the License Agreement. *AmeriPath, Inc. v. Hebert*, 447 S.W.3d

319, 336 (Tex. Ct. App. 2014)[1]. Such a finding would mean that YPPI does not have standing to claim the remedies under the License Agreement including the attorneys' fees provision. Moreover, YPPI's failure to obtain consent from Verizon or its successors would also bar it from enforcing the License Agreement.

YPPI argues that it disclosed the Old YPPI to AdMedia assignment in a footnote to a brief. See Yellow Pages Photos, Inc.'s Trial Brief, (D.I. 107-Main Case) where YPPI explained:

> On November 3, 2006, the Florida corporation then named Yellow Pages Photos, Inc. changed its name to AdMedia Systems, Inc. and transferred its business and copyrights to a new Florida corporation named Yellow Pages Photos, Inc. The two corporations were commonly owned, and the business known as "Yellow Pages Photos" or "YPPI" has continuously operated. . . .

Discovery revealed that Lori M. Lawless, a SuperMedia employee, knew of the existence of AdMedia. See SUPER-053939 ("New AdMedia Systems"); email from Ms. Lawless SUPER-053150 ("Subject: AdMedia"); Amendment Number One to Agreement Number VIS-2001-0045, SUPER-053151 ("AdMedia Systems, Inc., f/k/a Yellow Pages Photos, Inc." ("YPPI"), a Florida corporation. Also, the final, signed version of Amendment Number One indicates that "All references to 'Contractor' in the Agreement are hereby replaced with 'YPPI.'" SUPER-054255. "Agreement" means the 2001 Service Contractor Agreement, i.e., the License Agreement, and the document appears to mean that "new YPPI" became the Contractor thereby suggesting that SuperMedia did know of the AdMedia – YPPI dichotomy as early as July 18, 2007. Moreover, the Amendment may

---

[1] With the exception of bankruptcy issues, the License Agreement specifies that Texas Law governs.

also mean that SuperMedia accepted "new YPPI" as the Contractor. If so, SuperMedia's argument is for naught.

YPPI took additional discovery after the Court granted SuperMedia leave to file its Second Amended Complaint. YPPI took the deposition of Lori Lawless who was a contract manager for SuperMedia since 2004. Lawless Dep. 5:22-7:3. Based on the Lawless Deposition (taken on October 16, 2015), YPPI claims that: (1) Idearc knew before the 2007 Amendment to the License Agreement that "old YPPI" had changed its name to AdMedia, (2) Idearc knew that YPPI, not AdMedia, executed the Amendment, and (3) in the Amendment, YPPI became the "Contractor." YPPI argues that SuperMedia knew full well that from the Amendment on, it was dealing with YPPI – new YPPI.

SuperMedia counters that YPPI is not a party to the License Agreement and that AdMedia never obtained permission to assign its rights in the License Agreement to YPPI. SuperMedia argues that YPPI was not ever a party to the License Agreement.

The importance of Amendment Number One and the deposition testimony of witnesses Moore and Lawless, in particular, is obvious. We have a factual issue to be determined at trial with testimony from witnesses who have first-hand knowledge of the facts. The material issues of fact are, did YPPI become the "Contractor" under the License Agreement and did SuperMedia understand it was doing business with YPPI after July 2007?

## STATUTE OF LIMITATIONS

There are two statutes of limitation at play in the proceedings. First, under the Copyrights Act, the statute of limitations is three years, 17 U.S.C. § 507(b). Second, YPPI's

breach of contract claim on the License Agreement is subject to a four year limitations period under Texas law. Tex. Civ. Prac. & Rem. Code Ann. § 16.051.

On the copyright claims, the statue began to run when Moore discovered or with the exercise of due diligence should have discovered the alleged infringement. SuperMedia points to events which it claims should have alerted YPPI to the infringement.

These events include:

- Licensees were outsourcing ad production as early as 2004. SuperMedia Exhibit S, Vicari Dep. At 17:5-7, 53:24-54:19; SuperMedia Ex. R, Suggs Dep. at 34:5-23.

- In 2007, Idearc and YPPI amended the License Agreement to authorize third-party contractors as authorized users of YPPI Images and Lori Lawless told Trent Moore that Idearc intended to outsource ad production. SuperMedia Exhibit T, Lawless Dep. at 53:4-55:19.

- On October 6, 2009, Idearc announced that it intended to enter into an outsourcing agreement with Tata. See SuperMedia Ex. N.

- Moore read Idearc's public filings. SuperMedia Ex. Z, April 9, 2014 Trial Tr. at 23:2-6.

SuperMedia refers to these events as "storm warnings" which place the burden on YPPI to "show that [it] exercised reasonable due diligence and yet [was] unable to discover [its] injuries," citing *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006).

Under Texas law on the breach of the License Agreement, the injury must be "inherently undiscoverable." *Barker v. Eckman*, 213 S.W. 3d 306, 312 (Tex. 2006). SuperMedia argues that YPPI did not exercise due diligence and offered no evidence that

the transfer to AMDOCS in 2005 was undiscoverable or that it was appropriate for Moore not to ask in 2007 if SuperMedia transferred the Licensed Images when SuperMedia amended the License Agreement and Lori Lawless told Moore that Idearc was going to outsource its creative functions.

YPPI argues that it did not discover or have reason to discover the copyright infringement or breach of the License Agreement until the fall of 2010, thereby making its Proof of Claim filing in May 2013 within the three and four year statutes of limitation.

It is clear to the Court that when YPPI knew or should have known of breaches of the License Agreement or copyright infringement are questions of material fact which will be determined at trial. Summary judgment is inappropriate.

## ATTORNEY'S FEES

YPPI claims that it is entitled to attorneys' fees under the Copyright Act (17 U.S.C. § 505) and the License Agreement, § 16. The Court ruled earlier in this opinion that YPPI is precluded from recovering under the Copyright Act and therefore is not entitled to statutory attorneys' fees.

Section 16 of the License Agreement provides that the prevailing party is entitled to attorneys' fees if either YPPI or SuperMedia commences an action arising from a breach of the License Agreement. Several observations are in order. One, YPPI is not yet a prevailing party. The Court denied YPPI's request for an administrative claim. Two, YPPI's existence and the possible bar of the statute of limitations mean it is now premature to award attorneys' fees on YPPI's pre-petition claim. The Court will therefore not grant summary judgment on the attorneys' fees issue.

## **CONCLUSION**

For the stated reasons, the Court rules as follows:

1. Summary judgment is granted in favor of SuperMedia on statutory damages and attorneys' fees.

2. Summary judgment is granted in favor of YPPI on the Idearc discharge issue.

3. Summary judgment is denied on the issue of YPPI's existence.

4. Summary judgment is denied on the statutes of limitations issues.

5. Summary judgment is denied on the attorneys' fees issues on the License Agreement.

Dated: October 27, 2015

_____
KEVIN GROSS, U.S.B.J.